[Civ. No. 46846. Second Dist., Div. Three. Jan. 27, 1976.]

WERNER SYLLA, Plaintiff and Appellant, v.
UNITED STATES FIDELITY AND GUARANTY COMPANY,
Defendant and Respondent.

**COUNSEL**

Timothy M. O'Connor for Plaintiff and Appellant.

Stephen J. Grogan, Robert E. Long, Ellis J. Horvitz and Arthur E. Schwimmer for Defendant and Respondent.

**OPINION**

**ALLPORT, J.**—Plaintiff appeals from an order of dismissal of his first amended complaint for declaratory relief and breach of contract following the sustaining of a demurrer thereto without leave to amend. (Code Civ. Proc., § 581, subd. 3.) The appeal lies. (Code Civ. Proc., §§ 581d, 904.1, subd. (a).)

The amended complaint alleges that plaintiff was the owner of "Werner Sylla Used Cars" and "Autohaus Sylla." Attached to the amended complaint is a copy of a "Comprehensive General—Automobile Liability Insurance" policy covering, inter alia, "Garage" liability issued to Werner Sylla doing business as Werner Sylla Used Cars & Auto Haus Sylla by defendant United States Fidelity and Guaranty Company. The policy period was from May 19, 1972, to May 19, 1973. The insuring clause provided: "The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of G. bodily injury or H. property damage to which this insurance applies, caused by an occurrence and arising out of garage operations . . . and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage. . . ."

The policy defines "garage" as "an automobile sales agency, repair shop, . . ." "Occurrence" is defined to mean "an accident, . . . which results, during the policy period, in bodily injury or property damage. . . ."

The amended complaint then alleges:

## "VII

"That an actual controversy has arisen and now exists between plaintiff and defendants concerning their respective rights and duties under said policy of insurance in that plaintiff contends that on September 15, 1972, he sold a 1959 Porsche automobile, California License No. LUU 807 to Michael McNamara which was involved in an automobile accident on or about February 9, 1973. That as a result of said accident third parties are claiming damages for personal injuries suffered in such accident and have commenced a lawsuit entitled, WALTER LLOYD BEERS v. MICHAEL McNAMARA, et al., Los Angeles County Superior Court Case No. WE C 28955 which names plaintiff as a defendant in said action. That plaintiff Beers alleges in his suit that WERNER SYLLA (plaintiff in this suit) is liable on the theory of strict tort liability for selling said 1959 Porsche automobile in a defective condition, or in the alternative, for making garage repairs on that same 1959 Porsche automobile in a negligent manner. That plaintiff has been served with a copy of the Summons and Complaint in said action and has demanded that defendants furnish him with attorneys for the purpose of defending his interests in said personal injury suit. That

defendants and each of them have failed, neglected and refused to either furnish attorneys for purposes of defending plaintiff and have further denied that there is any insurance coverage protecting plaintiff from the liability sought to be imposed upon him in said lawsuit.

## "VIII

"That plaintiff contends that said written insurance policy, specifically the coverage entitled 'Garage Liability' and set forth in haec verba in paragraph V of this complaint, obligates defendants and each of them to defend his interest in said lawsuit and that under the terms of said policy defendants are obligated to insure him from the liability sought to be imposed upon him in said lawsuit for the reason that said insurance policy was, in full force and effect on or about September 15, 1972, the date that he sold the automobile; that according to the definition of terms supplied in the policy and set forth in haec verba in paragraph VI of this complaint, this sale was the 'occurrence' which plaintiff Beers alleges as the proximate cause of his damage in suit against the plaintiff, SYLLA WERNER, herein.

## "IX

"That defendants deny each of the above contentions and contend that they are not obligated to furnish attorneys to defend plaintiff in said lawsuit nor is there any insurance coverage protecting his interests from the liability to be imposed upon him in said lawsuit for the reason that said policy was cancelled by defendants on or about November 24, 1972, and therefore, there was no insurance coverage on the date of the accident, February 9, 1973."

Plaintiff prayed for a declaration of the rights and duties of the parties under the contract of insurance and a declaration that defendant is obligated to provide him with attorneys to defend the Beers litigation and to indemnify him against any loss and damage for which he might also become liable as a result thereof.

A demurrer was filed by defendant alleging that the amended complaint "does not state facts sufficient to constitute a cause of action . . ." and that it is uncertain in that it cannot be determined therefrom how defendant could be liable for an accident occurring February 9, 1973, when the policy was cancelled on November 24, 1972. The demurrer was sustained without leave to amend and plaintiff challenges that ruling on appeal.

## Contentions

It is contended that the amended complaint pleads facts sufficient to show the existence of a cause of action for declaratory relief and that a general demurrer is not an appropriate vehicle to adjudicate the merits of such a controversy. As a corollary it is also contended that the ambiguous nature of the insurance contract presents factual and public policy issues only susceptible of resolution by a trial on the merits.

## Discussion

It appears from the complaint that Sylla is presently faced with a potential liability for injuries resulting from his sale of an automobile in a defective condition and/or for negligent repair thereof occurring on September 15, 1972. At that time the insurance policy was in force and effect covering him for liability for an occurrence arising out of garage operations. The policy was cancelled on November 24, 1972. The automobile was thereafter involved in an accident on February 9, 1973.

Plaintiff claims he had a reasonable expectation of coverage for his liability, if any, arising out of the automobile accident. Defendant contends otherwise arguing that the automobile accident was not an occurrence resulting in bodily injury within the policy period.

We believe these differences can best be clarified and resolved by reference to the basic vehicular liability insurance functions performed by insurance carriers. In the ordinary situation it is owner-operator accident liability that is the hazard insured against and coverage is readily limited to incidents occurring within the policy period. However in garage owners liability coverage the situation is very different and a failure to recognize this difference by a further and more detailed definition of the term "accident" in the policy has led to substantial confusion.

Resort by the carriers to the use of a so-called garage liability policy recognizes the existence of hazards not contemplated by the situation referred to above. The purchaser of such coverage seeks protection against future liability resulting from his own negligence with respect to the sale and/or repair of the vehicle and is not otherwise concerned with the operation of the vehicle by another over whom he has no control. Thus in the case of the garage owner the fundamental hazard is not a vehicular collision itself but rather the garage owner's negligence in

respect to the vehicle while it is in his possession. Thus defining "occurrence" as an "accident" in such a policy is of little assistance to anyone concerned with the nature and extent of the coverage afforded by the policy.

■ We now turn to a consideration of the instant case. Defendant argues that, because the occurrence insured against by the policy is defined therein as "an accident" which results during the policy period in bodily injury and that the vehicular collision did not occur until after the date of that event, no coverage is available under the terms of the policy. The argument simply reemphasizes the confusion referred to above.

The failure to further define the word "accident" in this garage liability policy creates such a doubt, uncertainty and ambiguity with respect to the coverage extended thereunder as to bring into play the rule of *Gray* v. *Zurich Insurance Co.,* 65 Cal.2d 263, 269-270 [54 Cal.Rptr. 104, 419 P.2d 168], wherein it was held that under such circumstances the policy must be interpreted to extend to an insured the coverage which he reasonably had a right to expect from the insurer. The policy definition of "occurrence" as an accident, when viewed in the light of Sylla's operation as a used car dealer and repairman, is either meaningless or at very least ambiguous or uncertain. When tested by the principle espoused in *Gray, supra,* the instant policy must be construed to extend coverage to Sylla. Repair and sale of automobiles was a functional part of his business. He had every right to expect coverage for losses proximately resulting from his repair and sale of the automobile at a time the policy was in effect.

We find support for the position taken herein in the well reasoned case of *Oil Base, Inc.* v. *Continental Cas. Co.,* 271 Cal.App.2d 378 [76 Cal.Rptr. 594]. In *Oil Base* the insurance carrier obligated itself to indemnify against loss caused by "accident." The *Oil Base* court held that a "sale" of a product could be considered to be an "accident" within the meaning of an indemnity policy which failed to define the latter term more specifically. In so holding the court said at pages 387-388:

"Under California law, as stated in *Geddes & Smith, Inc.* v. *St. Paul Mercury Indem. Co.,* 51 Cal.2d 558, 563 [334 P.2d 881]:

" 'No all-inclusive definition of the word "accident" can be given. It has been defined "as 'a casualty—something out of the usual course of

events and which happens suddenly and unexpectedly and without design of the person injured.' " [Citations.] It " 'includes *any event which takes place without the foresight or expectation of the person acted upon or affected by the event.'* " [Citations.] "Accident, as a source and cause of damage to property, within the terms of an accident policy, is an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause." [Citation.]'

"In *Maxon* v. *Security Ins. Co.,* 214 Cal.App.2d 603, 612 [29 Cal.Rptr. 586], the court adopted the definition of accident, as found in *Hyer* v. *Inter-Insurance Exchange etc. of Southern Cal.,* 77 Cal.App. 343, 348-349 [246 P. 1055]:

" 'It is an "occurrence which produces hurt or injury." It also will be noticed that under this quite generally approved definition the word, as used in some classes of cases, denotes the cause of the hurt or loss; in other classes of cases it denotes the event, i.e., the unintended and unexpected loss or hurt apart from its cause; and in still other instances it may denote both the cause and the event, no attempt being made to discriminate between them. . . . But as commonly *used in liability insurance policies,* the word "accident" is predicated of an occurrence which is the *cause* of the injury. *That is to say, as used in liability insurance contracts, the word is employed to denote the cause, rather than the effect.'* (Italics added.)

"In the light of the quoted definitions, particularly the definition in *Hyer,* it is indisputable that the word 'accident' as used in liability insurance policies, is susceptible of several meanings. In the policy at bench, Continental chose not to define the word 'accident,' although the policy supplies other definitions. Uncertainty as to the intended meaning of the word 'accident' could have been clarified by the language of the exclusionary clause.

"*Gray* holds too, that the policy clause obligating an insurer to defend, is severable from its liability for the loss insured against and makes clear that an insurer may be responsible on the obligation to defend, even though there may have been no obligation to indemnify for loss. In *Lowell,* the court had substantially the same policy language of both the indemnity and defense clauses before it. Both cases hold that a policy must be construed so as not to defeat the reasonable expectation of the insurer.

"At bench, the findings of the trial court disclose without ambiguity appellant's reasonable expectations."

Likewise, in the instant case, we conclude that failure to define the term "accident" has created the ambiguity recognized in *Oil Base, Inc., supra.* Since under *Gray, supra,* we must resolve the ambiguity in favor of the insured's reasonable expectations, we have no difficulty in holding that the repair and/or sale may be deemed an accident within the purview of the garage liability policy and that coverage is extended to Sylla for any liability he may have for damages arising out of the Beers litigation. Thus the insurer is obligated to both defend and indemnify its insured in this case.

In view of our decision, *ante,* we find it unnecessary to discuss the additional arguments advanced by the parties in support of their respective positions herein.

The judgment is reversed.

Cobey, Acting P. J., and Potter, J., concurred.

A petition for a rehearing was denied February 19, 1976, and respondent's petition for a hearing by the Supreme Court was denied March 24, 1976. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.