28 F.3d 104
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
AC CIRCUIT BREAKERS, Plaintiff-Appellee-Cross-Appellant,
v.
HARTFORD FIRE INSURANCE COMPANY, et al., Defendants-Appellees.
 Nos. 92-56156, 92-56261 and 92-56295.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 4, 1994.
Decided June 8, 1994.
 
 1
 Before: BROWNING and KLEINFELD, Circuit Judges, and FONG, District Judge**.
 
 
 2
 MEMORANDUM**
 
 INTRODUCTION
 
 3
 This case raises the question whether the district court erred in granting partial summary judgment in favor of Appellee AC Circuit Breakers, Inc. ("AC") and denying Appellants Hartford Fire Insurance Company's ("Hartford") and Employers Casualty Company's ("Employers") motions for summary judgment. Since the time of the district court's decision, the California Supreme Court has decided Bank of the West v. Superior Court, 2 Cal.4th 1254, 833 P.2d 545, 10 Cal.Rptr.2d 538 (1992), which compels us to reverse.
 
 BACKGROUND
 
 4
 The central issue in this insurance coverage dispute is whether Hartford owes AC a duty to defend in four underlying actions. AC is a named defendant in the four underlying actions,[1] in each of which the plaintiffs allege (1) trademark infringement (in violation of 15 U.S.C. Secs. 1114 and 1125), (2) trademark dilution (in violation of California Business and Professions Code Sec. 14330), (3) unfair competition (in violation of California Business and Professions Code Sec. 17200 et seq. and the common law), and (4) RICO violations (pursuant to 18 U.S.C. Sec. 1962). The four cases allege that AC (and the other defendants) engaged in a scheme to obtain used circuit breakers, remanufacture them, and then sell them as new, concealing the remanufacture by applying counterfeit labels to the circuit breakers and the shipping cartons.
 
 
 5
 Hartford and Employer issued successive general liability insurance policies to AC. AC tendered the defense of the four underlying actions to the two insurers under their policies' advertising injury liability coverages. After both insurers denied AC a defense, AC brought the instant action alleging that Hartford and Employers owed it a duty to defend.
 
 
 6
 On cross-motions for summary judgment, the district court granted partial summary judgment against Hartford and Employers, holding that both insurers owed a duty to defend AC in the four underlying actions. The court found that there was potential coverage on the basis of the unfair competition claims in the underlying complaints.
 
 DISCUSSION
 
 7
 The district court granted partial summary judgment in favor of AC with respect to the duty to defend owed by Hartford and Employers. The issue on this appeal is whether the district court erred in holding that the insurers owed a duty to defend under the "advertising injury" coverage of the general liability policies issued to plaintiff. The district court's grant of summary judgment is reviewed de novo. See Jones v. Union Pac. R.R., 968 F.2d 937, 940 (9th Cir.1992).
 
 
 8
 Before considering exclusions in an insurance policy, the court "must examine the coverage provisions to determine whether a claim falls within the potential ambit of the insurance." Hallmark Ins. Co., Inc. v. Superior Court, 201 Cal.App.3d 1014, 1017, 247 Cal.Rptr. 638, 639 (1988) (citations omitted). Only where the terms of the policy afford coverage must the court consider whether any exclusions apply.
 
 
 9
 The Hartford and Employers policies provide that the insurer has a duty to defend whenever there is a potential claim against the insured for damages which would be payable under the policy. The issue on this appeal is whether the advertising injury coverage of the two policies afford coverage for claims in the underlying action. Both policies contain similar definitions of "advertising injury" and provide that advertising injury means an injury arising out of an offense committed during the policy period in connection with the named insured's advertising activities, so long as the "injury" (under the Employers policy) or the "offense" (under the Hartford policy) arises out of one of several specified activities, including defamation, infringement of copyright, title, or slogan, and unfair competition. In the instant case, AC had asserted and the district court found coverage under both policies under the "unfair competition" coverage.
 
 
 10
 The duty to defend is generally triggered whenever a suit "potentially seeks damages within the coverage of the policy." Gray v. Zurich Ins. Co., 65 Cal.2d 263, 275, 419 P.2d 168, 176, 54 Cal.Rptr. 104, 112 (1966). "[W]here there is no potential for coverage, there is no duty to defend." Standard Fire Ins. Co. v. Peoples Church of Fresno, 985 F.2d 446, 450 (9th Cir.1993) (citing Jaffe v. Cranford Ins. Co., 168 Cal.App.3d 930, 934 (1985)).
 
 
 11
 The district court concluded that there was coverage under the policy based on the "unfair competition claim." Since that ruling, the California Supreme Court has addressed the issue of coverage for unfair competition claims under a provision covering advertising injuries in a comprehensive general liability policy.[2] Bank of the West v. Superior Court, 2 Cal.4th 1254, 833 P.2d 545, 10 Cal.Rptr.2d 538 (1992). California law governs this action in diversity. See, e.g., Standard Fire, 985 F.2d at 448-49 (applying Bank of the West to insurer's declaratory judgment action in diversity).
 
 
 12
 In Bank of the West, the insurer brought a declaratory judgment action to determine its obligation to defend the insured bank in the underlying action, a suit alleging, inter alia, unfair competition in violation of Sec. 17200 et seq. of the California Business & Professions Code. 2 Cal.4th at 1259. The California Supreme Court held "that 'advertising injury' must have a causal connection with the insured's 'advertising activities' before there can be coverage." Id. at 1277. To hold otherwise, the court reasoned, would unreasonably extend coverage by extending it to encompass most claims related to the insured's business irrespective of their relation to advertising. Id. at 1276-77. That AC advertised and, at the same time, engaged in unfair competition, is insufficient to trigger advertising injury coverage. Because the unfair competition in the instant case was not causally related to the advertising injury, Bank of the West mandates reversal.
 
 
 13
 In addition to the unfair competition claim, plaintiffs in the underlying actions have claims for trademark infringement, trademark dilution (in violation of the California Business & Professions Code), and RICO violations. Both the Hartford and Employers policies define "advertising injury" to include defamation and infringement of copyright, title, or slogan. The Hartford policy also defines "advertising injury" as including "piracy" and "idea misappropriation under an implied contract." The Employers policy defines "advertising injury" as "violation of [the] right of privacy." Because none of plaintiffs' remaining claims could potentially fall within the scope of these areas of coverage, there is no possibility that coverage could exist under another basis.
 
 CONCLUSION
 
 14
 The intervening Bank of the West decision bars the possibility of coverage on the basis of the unfair competition claim. There are no claims in the underlying action which fall within the scope of coverage. We therefore direct that the district court's grant of summary judgment is REVERSED and that summary judgment shall be entered in favor of defendants.
 
 
 
 *
 The Honorable Harold M. Fong, United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The four underlying actions against AC (and others) have been filed in the United States District Court for the Central District of California by Square D Co. ("Square D"), Westinghouse Electric Corp. ("Westinghouse"), General Electric Corp. ("GE"), and Underwriters Laboratories, Inc. ("UL")
 
 
 [2]
 Bank of the West involved policy langauge identical to that in the instant case